# UNITED STATES BANKRUPTCY COURT
# SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| In re: | : | Case No. 10 - 54533 |
| FIRST COMMUNITY VILLAGE, | : | Chapter 11 |
| Debtor. | : | Honorable C. Kathryn Preston |

**MOTION OF DEBTOR, FIRST COMMUNITY VILLAGE, FOR INTERIM AND FINAL ORDERS: (1) AUTHORIZING DEBTOR TO USE CASH COLLATERAL PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363 AND 507, BANKRUPTCY RULES 2002, 4001 AND 9014, AND LOCAL RULE 4001-2; (2) GRANTING ADEQUATE PROTECTION; (3) MODIFYING THE AUTOMATIC STAY; (4) SCHEDULING AND APPROVING THE FORM AND METHOD OF NOTICE OF FINAL HEARING; AND (5) GRANTING OTHER RELATED RELIEF**

First Community Village, the debtor and debtor-in-possession ("Debtor" or "FCV") in the above-captioned chapter 11 case, hereby moves this Court pursuant to §§ 105(a), 361, 362, 363 and 507 of Title 11 of the United States Code (the "Bankruptcy Code") and Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Local Rule 4001-2, for the entry of both an interim and final order (1) authorizing and approving, pursuant to § 363 of the Bankruptcy Code, the Debtor's use of Cash Collateral of the Pre-Petition Lenders;[1] (2) granting the Pre-Petition Lenders (a) adequate protection, including, without limitation, adequate protection against the diminution in the value or amount of the Pre-Petition Collateral, (b) Replacement Liens, and (c) a super-priority administrative expense claim under

---

[1] Except as otherwise defined in this Motion, capitalized terms herein shall have the same meaning as ascribed to them in the proposed *Interim Order Under 11 U.S.C. §§ 105(a), 361, 362, 363 and 507, Federal Bankruptcy Rules 2002, 4001 and 9014, and Local Rule 4001-2: (i) Authorizing Debtor to Use Cash Collateral; (ii) Granting Adequate Protection; (iii) Modifying The Automatic Stay; (iv) Setting Final Hearing; and (v) Granting Related Relief* (the "Interim Order") attached hereto as Exhibit A.

§ 507(b) of the Bankruptcy Code, subject to the limitations as more particularly set forth below; and (3) granting any such other further and related relief as the Court deems just and equitable. In support of this Motion, the Debtor attaches and incorporates herein the following memorandum.

                              Respectfully submitted,

                              */s/ Thomas R Allen*
                              Thomas R. Allen   (0017513)
                              Richard K. Stovall   (0029978)
                              J. Matthew Fisher   (0067192)
                              ALLEN KUEHNLE STOVALL & NEUMAN LLP
                              17 South High Street, Suite 1220
                              Columbus, OH 43215-4100
                              Telephone:  (614) 221-8500
                              Facsimile:  (614) 221-5988
                              Email:       allen@aksnlaw.com
                              Email:       stovall@aksnlaw.com
                              Email:       fisher@aksnlaw.com
                              *Proposed Counsel for Debtor and Debtor in Possession, First Community Village*

**MEMORANDUM IN SUPPORT**

**BANKRUPTCY RULE 4001(b)(1)(B) AND (d)(1)(B)
CONCISE STATEMENT OF RELIEF REQUESTED**

In accordance with Bankruptcy Rule 4001(b)(1)(B) and (d)(1)(B), the Debtor submits the following statement of the relief requested herein. Inasmuch as this statement is by nature a summary, it is qualified in all respects by this Motion and the terms of the Interim Order, which shall govern in the event of any inconsistency. However, the Debtor has made every effort to ensure that this summary is accurate.

Pursuant to § 363 of the Bankruptcy Code, the Debtor requests authority to use cash collateral of the Pre-Petition Lenders pursuant to the terms of the Interim Order and a final order to be entered after a final hearing. The Debtor's use of Cash Collateral will provide working capital to the Debtor for use in its operations in accordance with the Budget attached to the Interim Order.

The following table lists the material provisions of the proposed use of Cash Collateral and identifies their location within the Interim Order or elsewhere.

| Provision | Description | Location |
|---|---|---|
| Pre-Petition Lenders | Sovereign Bank, HSH Nordbank AG, acting through its New York Branch, KBC Bank, N.V. and National Consumer Cooperative Bank | Interim Order ¶ G(ii); Construction Loan, Reimbursement and Credit Agreement dated as of March 1, 2005 (the "Pre-Petition Credit Agreement") p.1 |
| Administrative Agent for Pre-Petition Lenders | Sovereign Bank | Interim Order ¶ (G)(ii); Pre-Petition Credit Agreement p.1 |
| Purpose | To fund general operating expenses and working capital | *See* Budget |

| Provision | Description | Location |
|---|---|---|
| | needs of Debtor in the ordinary course of business and to fund professional fees and expenses incurred in connection with the Case. | |
| Priority | Section 507(b) priority is granted as adequate protection to Pre-Petition Lenders for diminution in value of interests in Pre-Petition Collateral (as defined in the Interim Order, "Adequate Protection Claim") over all administrative expenses under §§ 105, 326, 328, 330, 331, 503(a), 503(b), 506(c), 507(a), 546(c), 726(b) (to extent permitted by law), 1113 and 1114; subject to Carve-Out, Chelsea Cash Collateral Refund Claims and Post-Petition Resident Refund Claims. | Interim Order ¶ 4 |
| Carve-Out | Includes (i) $20,000 for Debtor's counsel fees and expenses post-default, plus any pre-default fees and expenses incurred but unpaid, and (ii) fees of the U.S. Trustee and the Clerk of the Bankruptcy Court. | Interim Order ¶ 5 |
| Liens | Pre-Petition Lenders' Adequate Protection Claim is secured by the Collateral, with priority junior to the Carve-Out, Chelsea Cash Collateral Refund Claims and Post-Petition Resident Refund Claims. At the final hearing, Debtor may seek to include as Post-Petition collateral bankruptcy related causes of action under Chapter 5 of the Bankruptcy Code. | Interim Order ¶ 4 |
| Events of Default | Termination Events include: dismissal or conversion of Case; appointment of trustee or examiner with expanded powers; Debtor's cessation of operation; reversal, vacatur, stay, etc. of Interim Order; Final Order not entered within 45 days after Petition Date; Debtor's failure to comply with Interim Order; sale or disposition of Collateral or Cash Collateral approved without Lenders' consent; grant of lien or priority superior to or in parity with Lenders' liens or superpriority claim; stay relief granted with respect to material asset of Debtor; confirmation of a plan not acceptable to Agent on behalf of a majority of lenders. | Interim Order ¶ 13 |

| Provision | Description | Location |
| --- | --- | --- |
| Remedies Upon Maturity or Termination | Upon Maturity Date or Termination Event and Lenders' giving of Remedies Notice (a) Debtor must segregate and not use Cash Collateral; and (b) and after five Business Days' notice, Lenders may, free of the automatic stay, exercise rights and remedies including enforcement of rights against Collateral, unless order entered to the contrary prior to five Business Days. | Interim Order ¶ 14 |
| Challenge to Claims or Liens | Committee granted 60 days after appointment (and other parties granted 75 days after Petition Date) to challenge Debtor's Stipulations in Interim Order ¶ (G)(i)-(vi), including, without limitation, the existence, validity, amount, non-avoidability, non-subordination and non-recharacterization of the Senior Secured Indebtedness; the perfection and seniority of lien of First Mortgage; and the absence of any defenses, offsets or claims against the Senior Secured Indebtedness or the Agent or Pre-Petition Lenders. | Interim Order ¶ 8 |
| Section 506(c) Waiver | Debtor may seek 506(c) waiver in Final Order. | Interim Order ¶ 7 |
| Waiver of Cash Collateral and Financing Requests | While Adequate Protection Claim is outstanding, absent Lenders' consent, Debtor shall not seek or support requests for use of Cash Collateral, sale of Collateral outside ordinary course, financing under § 364(c) or (d), or grant of lien or priority equal or senior to Lenders. | Interim Order ¶ 9 |
| Waiver of Perfection Requirement | Liens granted to Lenders need not be perfected by filing UCC financing statements or other instruments; they are deemed perfected by Interim Order. | Interim Order ¶ 12 |

## **JURISDICTION**

1.     The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the General Order of Reference entered in this district. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. The matters raised herein constitute core proceedings pursuant to 28 U.S.C. § 157(b)(2).

**BACKGROUND**

2.      FCV filed its voluntary petition for relief under chapter 11 of title 11 of the United States Code ("Bankruptcy Code") on April 18, 2010 (the "Petition Date").  FCV is conducting its business and is operating as a debtor in possession pursuant to §§ 1107 and 1108 of the Bankruptcy Code.  Daily management of the property of the Debtor is conducted on its behalf by National Church Residences – Health Care, pursuant to the terms of that certain Management Agreement dated as of May 11, 2009, as amended and extended.

3.      FCV is an Ohio not-for-profit corporation, originally formed in March of 1961.  FCV operates and maintains a continuing care retirement facility in Upper Arlington, Ohio on a 31 acre campus owned by FCV.  Prior to the initiation of the Chelsea project, the campus consisted of three parcels of real estate improved, historically, with a 175 bed nursing center[2], referred to as the Village Healthcare Center, an 88 unit assisted living and administrative and logistical support facility, known as the Dr. Roy A. Burkhart Center, a 90 unit congregate independent living facility consisting of eleven free standing buildings, and 43 cottage apartments.  Presently, FCV is home to 314 residents.

4.      In March of 2005, FCV commenced an extensive redevelopment of its campus, comprised of a two phased project.  The first phase ("Phase I") consisted of the demolition of four of the existing congregate independent living buildings (the South Garden) and three cottage apartments and the construction of a new 86 apartment congregate facility called The Chelsea, a 38 apartment assisted living facility (the Burkhart), 36 dementia care apartments (the Roxbury Cottages), six manor home independent living apartments and replacement ancillary and support facilities and connecting structures that provide service, physical care, and logistical

---

[2] Due to a sale of 12 skilled nursing bed licenses, FCV now has a 163 bed nursing center.

support for the entire Village complex. Construction of Phase I was scheduled to be completed in December 2006. It was finally completed in March 2008. The second phase of the project ("Phase II") is to be comprised of the demolition of the original 88 unit assisted living/administrative building and other improvements, and the completion of the final 32 manor homes. Construction of Phase II was commenced then halted after ten percent of the work was completed.

5. To finance its contemplated redevelopment, FCV entered into a series of transactions, described generally as follows:

a. The County of Franklin, Ohio (the "Issuer"), acting by and through the County Hospital Commission of Franklin County, issued $58,705,000 aggregate principal amount Variable Rate Health Care Facilities Revenue Refunding and Improvement Bonds, Series 2005 (The Chelsea at First Community Village Project) (the "Senior Bonds") pursuant to a Trust Indenture dated as of March 1, 2005 (the "Senior Indenture"), under which The Huntington National Bank is the Trustee (in such capacity, the "Senior Bond Trustee"). The Issuer made the proceeds of the Senior Bonds available to FCV and entered into a Lease Agreement dated as of March 1, 2005 with FCV (the "Senior Bond Lease"), having acquired the property leased to FCV through a Base Lease dated as of March 1, 2005 from FCV to the Issuer (the "Senior Base Lease"). FCV agreed under the Senior Bond Lease to pay directly to the Senior Bond Trustee, for the account of the Issuer, Basic Rent (as defined in the Senior Bond Lease). Pursuant to an Assignment of Rights Under a Base Lease and Lease Agreement dated as of March 1, 2005, the Issuer assigned to the Senior Bond Trustee, and granted a lien on, all of the Issuer's rights under the Senior Base Lease and the Senior Bond Lease (except the Unassigned Issuer's Rights, as defined in said Assignment) to secure the Issuer's performance under the Senior Indenture.

Pursuant to a Guaranty Agreement dated as of March 1, 2005 (the "Senior Bond Guaranty"), FCV absolutely and unconditionally guaranteed to the Trustee, for the benefit of the holders of the Senior Bonds, (a) the full and prompt payment of the principal and premium, if any, on any Senior Bond, when and as the same shall become due, (b) the full and prompt payment of any interest on any Senior Bond, when and as the same shall become due, and (c) certain other amounts as provided in the Senior Bond Guaranty.

b. Sovereign Bank, as issuer ("Issuing Bank"), issued an irrevocable, direct-pay letter of credit dated March 30, 2005 in the stated amount of up to $59,525,262 (the "Letter of Credit") in connection with the Senior Bonds pursuant to the Construction Loan, Reimbursement and Credit Agreement dated as of March 1, 2005 (the "Pre-Petition Credit Agreement") among FCV, Sovereign Bank as Administrative Agent (in such capacity, the "Agent"), and Sovereign Bank, HSH Nordbank AG, acting through its New York Branch, KBC Bank, N.V. and National Consumer Cooperative Bank as Lenders (together with the Issuing Bank, the "Pre-Petition Lenders"). As more particularly set forth in the Pre-Petition Credit Agreement, FCV agreed to reimburse the Issuing Bank for any amounts drawn on the Letter of Credit. The Pre-Petition Credit Agreement also provides for a construction loan (the "Construction Loan") in the aggregate principal amount of up to $23,000,000.

c. The Issuer also issued $1,685,000 aggregate principal amount of Health Care Facilities Subordinate Revenue Bonds, Series 2005 (First Community Village Project) (the "Subordinate Bonds") pursuant to a Trust Indenture dated as of April 1, 2005 (the "Subordinate Indenture"), under which The Huntington National Bank is the Trustee (in such capacity, the "Subordinate Bond Trustee"). The Issuer made the proceeds of the Subordinate Bonds available to FCV and entered into a Lease with FCV dated as of April 1, 2005 (the "Subordinate Bond

Lease"), having acquired the property leased to FCV through a Base Lease dated as of April 1, 2005 from FCV to the Issuer (the "Subordinate Base Lease"). FCV agreed under the Subordinate Bond Lease to pay directly to the Subordinate Bond Trustee, for the account of the Issuer, Basic Rent (as defined in the Subordinate Bond Lease). Pursuant to an Assignment of Base Lease and Lease dated as of April 1, 2005, the Issuer assigned to the Subordinate Bond Trustee all of the Issuer's rights under the Subordinate Base Lease and the Subordinate Bond Lease (except the Unassigned Issuer's Rights as defined in said Assignment) to secure the Issuer's performance under the Subordinate Indenture. Pursuant to a Guaranty Agreement dated as of April 1, 2005 (the "Subordinate Bond Guaranty"), FCV absolutely and unconditionally guaranteed to the Subordinate Bond Trustee, for the benefit of the holders of the Subordinate Bonds, (a) the full and prompt payment of the principal and premium, if any, on any Subordinate Bond, when and as the same shall become due, (b) the full and prompt payment of any interest on any Subordinate Bond, when and as the same shall become due, and (c) certain other amounts as provided in the Subordinate Bond Guaranty.

    d.  The Agent has informed the Debtor that, on March 1, 2010, the Senior Bond Trustee drew the amount of $58,713,894.21 under the Letter of Credit as a result of a mandatory tender of the Senior Bonds on a credit expiration date under the Senior Indenture. The Issuing Bank honored and paid the draw and the Senior Bond Trustee's sight draft presented in connection therewith. The Debtor reimbursed the Issuing Bank only for such amount paid by the Issuing Bank to the Senior Bond Trustee in excess of the principal amount of the Senior Bonds. As a result of such draw on the Letter of Credit and pursuant to the Senior Indenture, the Issuing Bank now holds the Senior Bonds, in the principal amount equal to the amount drawn, as "bank bonds."

e. As of the Petition Date, with respect to the Subordinate Bonds, FCV's obligations included outstanding principal in the amount of $1,685,000.00, plus accrued and unpaid interest, all secured by a subordinate lien on virtually all of FCV's assets including its real property and improvements, fixtures and materials, its personal property, contracts, and general intangibles, which lien is expressly junior and subordinate to the liens securing the Senior Bonds and Construction Loan.[3]

6. Although now completed, the process of construction of Phase I caused FCV considerable financial harm. Cost over-runs and construction delays have resulted in millions of dollars of increased costs for marketing, operating expenses and debt service, which have seriously jeopardized the economic viability of FCV. Numerous liens have been filed against FCV's real estate assets arising from claims made by FCV's general contractor, Weis Builders, Inc. ("Weis"), as well as claims asserted by various sub-contractors and materialmen. The aggregate face amount of these filed liens exceeds $17,500,000.[4]

7. Contributing to FCV's problems is the extensive litigation that has also mushroomed with respect to the Phase I construction disputes. A review of the records of Franklin County Common Pleas Court reflects that at least ten civil actions are pending regarding the design and/or construction of Phase I. Many of these cases arise from claims of subcontractors seeking compensation from Weis, its surety, Federal Insurance Company, the Pre-Petition Lenders and/or FCV for funds claimed to be due and owing for work and/or materials provided for Phase I. Claims have also been asserted against the project architect, Perkins-

---

[3] The assertions made herein are for purposes of providing factual background with respect to the Subordinate Bonds, and are expressly subject to the terms and provisions of the documentation from which the references are made

[4] Reference to these claims and liens is for informational purposes only. FCV reserves all rights to contest the validity of any such claims and liens.

Eastman, Inc. Publicity concerning the lawsuits and liens has also negatively impacted the marketing efforts of FCV, slowing the pace of resident move-ins, which has further crippled FCV's finances.

8. The pending litigation and filed liens arising from the Phase I construction have made it impossible for FCV to re-commence construction of Phase II. FCV believes that its financial viability is inextricably tied to the completion of Phase II. FCV believes that Phase II cannot be completed until the pending litigation and liens have been adequately and appropriately addressed. To that end, FCV believes that the best forum in which to fully and expeditiously address these issues, and to clear a path for the prompt initiation of Phase II construction, is this Chapter 11 proceeding.

9. In the months leading up to the initiation of this case FCV and the Pre-Petition Lenders have engaged in good faith and extensive discussions and negotiations regarding the financial reorganization of FCV in a chapter 11 proceeding. Unfortunately, the parties have been unable to agree upon a course of financial restructuring acceptable to a sufficient number of the Pre-Petition Lenders. It is the hope and expectation of the Debtor that this Chapter 11 proceeding can provide a forum in which these negotiations can be successfully concluded.

## **RELIEF REQUESTED**

10. Consistent with FCV's hope to swiftly reorganize its financial affairs, it desires to use cash collateral available for Debtor in its operations. The Debtor proposes to use cash collateral substantially in accordance with the terms and provisions of the proposed *Interim Order Under 11 U.S.C. §§ 105(a), 361, 362, 363 and 507, Federal Bankruptcy Rules 2002, 4001 and 9014, and Local Rule 4001-2*: *(i) Authorizing Debtor to Use Cash Collateral; (ii) Granting Adequate Protection; (iii) Modifying The Automatic Stay; (iv) Setting Final Hearing; and (v)*

*Granting Related Relief* (the "Interim Order") attached hereto as Exhibit "A", for the reasons set forth below. The Debtor is engaged in negotiations with the Agent over final term and provisions of a cash collateral order, but as of the filing of this motion such negotiations have not been concluded.

11. By this Motion, the Debtor seeks entry of an interim and final order:

(a) authorizing and approving, pursuant to section 363 of the Bankruptcy Code, the Debtor's use of Cash Collateral of the Pre-Petition Lenders;

(b) granting the Pre-Petition Lenders (i) adequate protection, including, without limitation, adequate protection against the diminution in the value or amount of the Pre-Petition Collateral, (ii) Replacement Liens, and (iii) a super-priority administrative expense claim under section 507(b) of the Bankruptcy Code, such Replacement Liens and section 507(b) super-priority administrative expense claim to be subject to the Carve-Out, Post-Petition Resident Refund Claims, and any Chelsea Cash Collateral Refund Claims, all as more particularly set forth in the Interim Order; and

(c) granting any further and related relief as the Court deems just and equitable.

12. As required by L.B.R. 4001-2(a)(4), attached hereto respectively as Exhibits "B", "C", "D", "E", "F", "G", "H" and "I" are copies of the documents which give rise to and secure the Senior Secured Indebtedness: (a) the Senior Bond Lease, (b) the Senior Indenture, (c) the Senior Bond Guaranty, (d) the Pre-Petition Credit Agreement, (e) the First Mortgage; (f) the Pledge Agreement; (g) UCC Financing Statement No. OH00088026371 filed April 5, 2005 with the Ohio Secretary of State; and UCC Continuation Statement No. 20100350284 filed February 4, 2010 with the Ohio Secretary of State.

13. The reasons supporting the Debtor's need to use Cash Collateral are compelling. As described in more detail below, access to the Pre-Petition Lender's Cash Collateral is critical for the Debtor to continue its ordinary course, day to day operations for the Residents and to maintain the going concern value of its business for the ultimate benefit of the creditors herein. The Debtor has determined, without immediate access to Cash Collateral, it lacks sufficient liquidity to maintain its operations and reorganize its financial affairs in a manner consistent with its developed exit strategy. It is imperative that the Debtor maintain its operations with its Residents in order to realize upon its going concern value and to successfully reorganize its affairs. Use of the Pre-Petition Lenders' Cash Collateral provides the Debtor with the necessary working capital to preserve the Residents' home and the value of its estate and operate toward successfully consummating its reorganization as contemplated herein.

14. Accordingly, absent timely approval of this Motion, the Debtor will be unable to meet its necessary, ordinary course of business expenditures, which are critical to the Debtor's ability to maintain the integrity of its ongoing operations, including the care of its Residents, preserve the going concern value of its estate, and ultimately consummate a reorganization of its business. Additionally, Cash Collateral will be used to fund the Debtor's professional fees, and other reorganization expenses.

### **NEED FOR INTERIM USE OF CASH COLLATERAL PENDING THE FINAL HEARING**

15. Pursuant to Bankruptcy Rule 4001(b), a minimum of fourteen (14) days' notice is required before a final hearing on this Motion may commence. However, such Rule provides that the Court may conduct a hearing before such fourteen (14) day period expires, but may authorize the use of only that amount of cash collateral only to the extent necessary to avoid

immediate and irreparable harm to the estate pending a final hearing. Fed.R. Bankr. P. 4001(b)(2).

16. As noted above, it is critical to the success of this Chapter 11 case that the Debtor be authorized to use cash collateral. Accordingly, Debtor seeks interim approval of this Motion as permitted by Bankruptcy Rule 4001 and authorization to use Cash Collateral in the amount shown in the Budget through the date of the final hearing on this Motion. This amount is necessary to provide the Debtor with operating capital. Without the immediate availability of such working capital, the Debtor does not believe that it can continue its business operations in the period before a final hearing. The Debtor believes that it will suffer immediate and irreparable harm in the absence of an Interim Order authorizing interim use of cash collateral and, as a result, the Debtor's attempts to reorganize would be immediately and irreparably jeopardized.

## **NOTICE WITH RESPECT TO INTERIM ORDER**

17. The Debtor believes that the terms and conditions of the Interim Order are fair and reasonable, and that the Debtor's ability to use Cash Collateral is necessary, appropriate and essential to avoid immediate and irreparable harm to the Debtor, its estate and its creditors. The Debtor respectfully requests that, pending a final hearing on the Motion, the Interim Order be approved on an emergency interim basis.

18. Accordingly, given the exigencies of the situation and the timing of the filing of the Debtor's Chapter 11 petition and the Debtor's immediate need for use of Cash Collateral, the Debtor submits that the notice provided herein is sufficient and appropriate under the circumstances of this case. The Debtor will provide written notice to the following parties or, in lieu thereof, to their counsel, if known: (a) the Office of the United States Trustee; (b) FCV's twenty (20) largest unsecured creditors as identified in its chapter 11 filing; (c) all Mechanic's

Lien Claimants and their counsel, where identified; (d) the Issuer; (e) the Senior Bond Trustee, and its counsel; (f) the Agent, and its counsel; (g) each of the Pre-Petition Lenders, and their respective counsel; (h) the Subordinate Bond Trustee, and its counsel; and (i) Weis, and its counsel (collectively, the "Interim Notice Parties"). FCV submits that, in light of the nature of the relief requested, no other or further notice need be given.

## NOTICE AND SERVICE WITH RESPECT TO FINAL ORDER

19. Pursuant to Bankruptcy Rule 4001, the Debtor respectfully requests that the Court set a date for a final hearing as soon as practicable after the Petition Date and that the Debtor be authorized to provide notice of such final hearing on this Motion by serving a copy of this Motion (to the extent not previously served), together with the Interim Order in accordance with the terms of the Interim Order as soon as practical after entry of the Interim Order, upon the Interim Notice Parties.

## COMPLIANCE WITH L.B.R. 4001-2

20. The Debtor believes that the Concise Statement and the highlighted provisions comply with the requirements of L.B.R. 4001-2(b), thus negating the need for a separate checklist as permitted by L.B.R. 4001-2(b)(3).

## NO PREVIOUS REQUESTS

21. No previous motion or other requests for relief sought in this Motion have been made to this or any other court.

## FINAL HEARING

22. If no written objections are filed by a party in interest, the Debtor requests that the Interim Order be deemed a final order for all purposes. If, however, a final hearing is necessary, the Debtor requests that a final hearing on this Motion be scheduled for such date as the Court may deem appropriate.

**WHEREFORE**, the Debtor requests that the Court (i) enter the Interim Order substantially in the form annexed hereto as Exhibit A; (ii) after the final hearing, issue the Final Order, substantially in the form to be filed with the Court; and (iii) grant such other and further relief as the Court deems just and proper.

Respectfully submitted,

*/s/ Thomas R Allen*
Thomas R. Allen (0017513)
Richard K. Stovall (0029978)
J. Matthew Fisher (0067192)
ALLEN KUEHNLE STOVALL & NEUMAN LLP
17 South High Street, Suite 1220
Columbus, OH 43215-4100
Telephone: (614) 221-8500
Facsimile: (614) 221-5988
E-mail: allen@aksnlaw.com
stovall@aksnlaw.com
fisher@aksnlaw.com
*Proposed Counsel for Debtor and Debtor in Possession, First Community Village*